UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| EDWARD F. PLASTINO and ) | |
| SECOND AMENDMENT FOUNDATION, INC., ) | |
|  ) | |
| Plaintiffs, ) | |
|  ) | |
| v.  ) | Case No. 4:12-CV-1316 |
|  ) | |
| CHRIS KOSTER, in his Official Capacity as ) | |
| Attorney General of the State of Missouri; and ) | |
| TOM NEER, in his Official Capacity as ) | |
| Sheriff of St. Charles County, Missouri, ) | |
|  ) | |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

NOW COME the Plaintiffs, EDWARD F. PLASTINO and SECOND AMENDMENT FOUNDATION, INC., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: December 31, 2012                    Respectfully submitted,

David G. Sigale, Esq. (#6238103 (IL))        Matthew T. Singer, Esq. (MO ED Fed No.5262301)
LAW FIRM OF DAVID G. SIGALE, P.C.            THE LAW OFFICE OF MATTHEW T. SINGER
739 Roosevelt Road, Suite 304                6963 Waterman Avenue
Glen Ellyn, IL 60137                         St. Louis, MO 63130
630.452.4547                                 (314) 272-3388
dsigale@sigalelaw.com                        MTSinger@MTSinger.com
Admitted *pro hac vice*

                                             By:  _____/s/ David G. Sigale_____
                                                     David G. Sigale

                                             One of the Attorneys for Plaintiffs

*TABLE OF CONTENTS*

Table of Authorities …………………………………………………………………..……… iii

Preliminary Statement ................................................................................................................ 1

Statement of Facts ...................................................................................................................... 1

      A.      Missouri's Ordinance Bans Legal Aliens from Concealable Firearm
             Registration ............................................................................................................ 1

      B.      The Registration Prohibition's Impact on PLASTINO and Similarly-Situated
             Missouri Residents ...................................................................................... 3

Summary of Argument ............................................................................................................... 4

Argument ................................................................................................................................... 5

      I.      THE SECOND AMENDMENT APPLIES TO PLAINTIFF PLASTINO AND
            THE ORGANIZATIONAL PLAINTIFFS' LEGAL ALIEN MEMBERS …...…  5

      II.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE
            OF PRELIMINARY INJUNCTIVE RELIEF........................................................ 10

      III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE
            THE HARM  OF THE BAN ON CONCEALABLE FIREARM
            REGISTRATION BY LEGAL ALIENS ................................................................ 11

      IV.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS MISSOURI'S
            BAN ON CONCEALABLE FIREARM ENDORSEMENTS VIOLATES
            THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS .................. 12

      V.     THE BALANCE OF INTERESTS FAVOR IMMEDIATE
            INJUNCTIVE RELIEF............................................................................................ 13

Conclusion ................................................................................................................................ 14

## TABLE OF AUTHORITIES

Cases

*Bridges v. Wixon*,
    326 U.S. 135 (1945) …………………………………………………………………….... 7

*Dataphase Systems, Inc. v. C L Systems, Inc.*,
    640 F.2d 109 (8th Cir. 1981) …………………………………………………………… 12

*District of Columbia v. Heller*,
    128 S. Ct. 2783 (2008).............................................................................................. *passim*

*Elrod v. Burns*,
    427 U.S. 347 (1976) …………………………………………………..………….. 10

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir., 2011) …………………………………………………… 9, 10, 11

*Fletcher v. Haas*,
    851 F. Supp. 2d 287 (D.Mass, 2012) ………………………………………………….. 7, 8

*Graham v. Richardson*,
    403 U.S. 365 (1971) …………………………………………………….……………. 6

*Kwong Hai Chew v. Colding*,
    344 U.S. 590 (1953) ……………………………………………………………....... 6

*Lowry v. Watson Chapel School District*,
    540 F.3d 752 (8th Cir. 2008) …………………………………………………………… 10

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010) ............................................................................................. 9, 12

*Mid-America Real Estate Co. v. Iowa Realty Company*,
    406 F.3d 969 (8th Cir. 2005) …………………………………………………………… 11

*PCTV Gold, Inc. v. SpeedNet, LLC*,
    508 F.3d 1137 (8th Cir. 2007) ………………………………………………………….. 5, 12

*People v. Bounsari*,
    915 N.Y.S.2d 921 (N.Y. City Ct. 2011) ………………………………………………… 7

*Phelps-Roper v. Nixon*,
    545 F.3d 685 (8th Cir. 2008) …………………………………………………………… 11

*Pliego-Gonzalez v. City of Omaha*,
 8:11-CV-335 (D.NE 2011) ………………………………………………………………… 9

*Richmond Newspapers v. Virginia*,
 448 U.S. 555 (1980) ..………………………………………………………………….. 12

*Russian Volunteer Fleet v. United States*,
 282 U.S. 481 (1931) ………………………………………………………….................. 7

*Shrink Missouri Government PAC v. Adams*,
 151 F.3d 763 (8th Cir. 1998) ………………………………………………………… 10

*Sierra Club v. United States Army Corps of Engineers*,
 645 F.3d 978 (8th Cir. 2011) ………………………………………………………… 5

*State of Washington v. Ibrahim*,
 164 Wn.App. 503 (Wash. App. Div. 3,  2011) ……………………………………………….. 8

*Takahashi v. Fish & Game Commission*,
 334 U.S. 410 (1948) ………………………...……………………………………………….. 6

*United States v. Boffil-Rivera*,
 2008 U.S. Dist. LEXIS 84633 (S.D. Fla. Aug. 12, 2008) .................................................. 7

*United States v. Carolene Products Co.*,
 304 U.S. 144 (1938) ………………………………………………………….................... 6

*United States v. Flores-Higuera,*
 2011 U.S. Dist. LEXIS 84934 (N.D.Ga. July 6, 2011) …………………………………….. 8

*United States v. Huitron-Guizar*,
 678 F.3d 1164 (10th Cir. 2012)
 ………………………………………...……………………………………. 7

*United States v. Verdugo-Urquidez*,
 494 U.S. 259 (1990) ……………………………………………………….................. 5, 8

*United States ex rel. Turner v. Williams*,
 194 U.S. 279 (1904) …………………………………………………………………….. 5

*Winter v. NRDC, Inc.*,
 555 U.S. 7 (2008) ……………………………………………………………….............. 5

*Wong Wing v. United States*,
 163 U.S. 228 (1896) ……………………………………………………………................. 7

*Yick Wo v. Hopkins*,
   118 U.S. 356 (1886) ……………………………………………………………...……… 6

*Zadvydas v. Davis*,
   553 U.S. 678 (2001) ……………………….................................................................. 7


Constitutional Provisions

U.S. Const. amend. II .......................................................................................................... *passim*

U.S. Const. amend. XIV…………………………………………………………………….. *passim*


Statutes, Rules, and Ordinances

Missouri Statute § 571.101.2(1) RSMo  ……………………………………..……………… *passim*

Missouri Statute § 571.030.1 RSMo.................................................................................................. 2

Missouri Statute § 571.030.7 RSMo …………………………………………………..………….. 2

Missouri Statute § 558.011 RSMo …………………………………………………………………. 2


Other Authorities

T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State, and
   American Citizenship* 173 (2002) …………………………………………………….. 8

Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the National
   Government*, 1977 Sup. Ct. Rev. 275, 337 (1978) ……………………………………… 8

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

Missouri Statute § 571.101.2(1) RSMo, which denies otherwise-qualified legal aliens the ability to obtain an endorsement to bear concealable firearms for public carrying, flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms. Also, because otherwise-qualified United States citizens are not restricted from obtaining a concealed carry endorsement in Missouri, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated. The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are likely to succeed on the merits by the conclusion of this litigation. The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of Missouri residents has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack. Missouri has no valid interest in completely banning legal aliens from registering concealable firearms for public carrying when citizens are not so banned. Therefore, the balance of interests falls heavily on Plaintiffs' side, and preliminary injunctive relief is warranted and appropriate.

### *STATEMENT OF FACTS*

A.  *Missouri's Ordinance Bans Legal Aliens from Concealable Firearm Registration*

The State of Missouri requires that its residents who wish to obtain a concealed carry endorsement ("CCW") must apply with the city or County Sheriff, in PLASTINO's case this is the Defendant NEER.

§ 571.101 RSMo provides in pertinent part:

> 2. A certificate of qualification for a concealed carry endorsement issued pursuant to subsection 7 of this section shall be issued by the sheriff or his or her designee of the county or city in which the applicant resides, if the applicant:
>
> (1) Is at least twenty-one years of age, is a citizen of the United States . . .

§ 571.030.1 RSMo provides in pertinent part:

> "A person commits the crime of unlawful use of weapons if he or she knowingly:
>
> (1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use . . . ."

§ 571.030.7 RSMo provides in relevant part: "Unlawful use of weapons is a class D felony . . . ."

§ 558.011 RSMo provides in relevant part:

> 1.     The authorized terms of imprisonment, including both prison and conditional release terms, are:
>
> . . .
>
> (4) For a class D felony, a term of years not to exceed four years;

These Code sections prohibit PLASTINO and all other legal aliens residing in Missouri from obtaining a concealed carry endorsement, and from the public concealed carry of firearms for self-defense.

It is unclear what Missouri's claimed purpose was for enacting this prohibition, which serves solely to discriminate against Missouri's qualified legal alien population, including PLASTINO and members of SAF, though there is no purpose Missouri can offer that passes constitutional muster.

2

B.     *The Registration Prohibition's Impact on PLASTINO and Similarly-Situated Missouri Residents.*

Plaintiff PLASTINO is a citizen of Canada residing in St. Charles, St. Charles County, Missouri, and who has done so since 2006. PLASTINO is also a Status Indian, being a native Canadian and at least 50% Chippewa Indian. According to the Jay Treaty of 1794, as affirmed by section 289 of the 1952 Immigration and Naturalization Act, PLASTINO is considered a North American citizen, which entitles him to live and work in the United States. PLASTINO entered the United States pursuant to the certification of the Department of Indian Affairs of Northern Canada in approximately 1995 for employment and school, and commuted back and forth across the border.

After that, except for a one year period from 2001-2002 working in Canada (commuting to Niagara Falls, New York for the last six months of that period), PLASTINO has resided in the United States since 1999. In 2006, after Hurricane Katrina, PLASTINO was relocated by his employer from Biloxi, Mississippi to St. Louis. He moved to St. Charles, Missouri at that time, and has resided there ever since. PLASTINO is concerned about his ability to defend himself in the event violence is inflicted upon him. *See* Declaration of Edward F. Plastino, attached hereto.

PLASTINO applied for a concealed carry permit with the St. Charles County Sheriff's Department, but was denied by Defendant NEER on or about June 1, 2012, on the explicit grounds that he is not a United States citizen. PLASTINO would carry a loaded and functional concealed handgun in public for self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment. *See* Declaration of Edward F. Plastino.

SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes lawfully admitted aliens residing in Missouri. SAF has over 650,000 members and supporters

3

nationwide, including in the State of Missouri. PLASTINO is a member of SAF. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. SAF litigates this action on behalf of itself and its members, and as such has organizational standing to pursue this action and Motion. *See* Declaration of Julianne H. Versnel, Director of Operations of SAF, attached hereto.

Every day that passes without relief from Missouri's registration prohibition, all legal aliens residing in Missouri who are otherwise qualified to obtain a concealed carry endorsement, including PLASTINO and the members and supporters of Plaintiff SAF, are frustrated in their ability to carry handguns in a concealed manner for self-defense, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, PLASTINO and the qualified legal alien members of SAF would obtain permits and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration.

## *SUMMARY OF ARGUMENT*

Missouri's prohibition on legal aliens obtaining a concealed carry endorsement for self-defense, regardless of said legal alien's qualifications to do so, unquestionably violates the constitutional guarantees of keeping arms and equal protection under the laws, as do any other of Missouri's various ordinances that, regardless of their validity as generally applied, undeniably frustrate constitutionally-secured rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief. Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure Defendants. And given the degree to which Missouri's concealed carry

4

permit prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining Missouri's unconstitutional practices.

## *ARGUMENT*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Similarly, the Eighth Circuit acknowledged and evaluated these same four elements in *Sierra Club v. United States Army Corps of Engineers*, 645 F.3d 978, 989-997 (8th Cir. 2011); *See also PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007).

Plaintiffs easily satisfy all these threshold requirements for obtaining preliminary injunctive relief, and the balance of interests weigh heavily in their favor.

   I. THE SECOND AMENDMENT APPLIES TO PLAINTIFF PLASTINO AND SAF'S
      LEGAL ALIEN MEMBERS

The question of whether PLASTINO, a lawful alien residing in Missouri, and SAF's similarly-situated members enjoy Second and Fourteenth Amendment rights is an easy one – the Supreme Court has ruled that they do. ". . . '[T]he people' protected by the . . . Second [Amendment] . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). That includes those who are legally in the country. *See United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904). Of course, Missouri acknowledges this to some extent; legal aliens are allowed

5

home firearm possession and the open carry of firearms in public.  However, Missouri has arbitrarily decided that said legal aliens shall not be permitted to obtain a concealed carry endorsement.

"The Fourteenth Amendment provides, 'Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'  It has long been settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886)).

State action violates equal protection rights if it separates individuals into discrete classes based on citizenship and subjects those individuals to disparate treatment.  *Graham*, 403 U.S. at 371, 377.  A classification based on an individual's status as an alien is "inherently suspect and subject to close judicial scrutiny." *Id.* at 372.  "Aliens as a class are a prime example of a 'discrete and insular' minority (*see United States v. Carolene Products Co.*, 304 U.S. 144, 152-153, n. 4 (1938)) for whom such heightened judicial solicitude is appropriate."  *Graham*, 403 U.S. at 372.  "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws." *Id.* at 374 (quoting *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 420 (1948)).

Further, legal aliens in the United States have been extended the same Constitutional rights as citizens in a variety of other situations for more than one hundred years. *See*, *e.g.*, *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953) (resident alien is a "person" within the

6

meaning of the Fifth Amendment); *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (resident aliens have First Amendment rights); *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931) (Just Compensation Clause of Fifth Amendment); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (resident aliens entitled to Fifth and Sixth Amendment rights). Even illegal aliens then-presently in the Country receive protection under the Fourteenth Amendment's Due Process Clause. (*See*, *e.g.*, *Zadvydas v. Davis*, 553 U.S. 678, 693 (2001)).

The Tenth Circuit recently addressed the issue of the constitutionality of 18 U.S.C. § 922(g)(5) as applied to an illegal alien, an issue not confronted here. *United States v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012). However, in discussing the post-*Heller* litigation, the Court noted as to lawful permanent residents like PLASTINO:

> The thrust of Heller, or at least the intended thrust of much post-Heller litigation, has been to broaden the right. Recently some state statutes that burden gun possession by lawful permanent aliens (which § 922(g)(5) does not cover) have been declared invalid under the Equal Protection Clause, which requires that strict scrutiny be applied to state laws that impose restrictions based on alienage. *See*, *e.g.*, *People v. Bounsari*, 31 Misc. 3d 304, 915 N.Y.S.2d 921, 924 (N.Y. City Ct. 2011) (invalidating New York statute dating from 1905, prohibiting non-citizens from possessing a dangerous weapon, and noting related decisions in Michigan, Nevada, California); *Fletcher v. Haas*, [851 F. Supp. 2d 287, 301] (D.Mass. Mar. 30, 2012) (holding that Massachusetts's firearm regime contravenes the Second Amendment as applied to lawful permanent residents).

*Huitron-Guizar*, 678 F.3d at 1170. Other Courts have also ruled along a line dividing the lawful permanent resident from the illegal alien, where the lawful resident possesses Second Amendment rights and the illegal alien does not. *See*, *e.g.*, *United States v. Boffil-Rivera*, 2008 U.S. Dist. LEXIS 84633 at *32 (S.D. Fla. Aug. 12, 2008) ("Congress has made a policy judgment, as it has in numerous other statutes, that *unlike citizens and legal residents*, illegal aliens by their very unauthorized nature and lack of allegiance to the government of the United

7

States pose a greater risk to abuse firearms.") (Emphasis added.); *See also United States v. Flores-Higuera,* 2011 U.S. Dist. LEXIS 84934 at *5 (N.D. Ga. July 6, 2011) ("Because Defendant is not a citizen, or at the least, a lawful resident with ties to the community, the Court concludes that he is not a member of the "political community" whose rights are protected by the Second Amendment.)"

The Court concluded in *Fletcher v. Haas*, 851 F. Supp. 2d 287 (D.Mass. Mar. 30, 2012):

> With this framework in mind, I find no justification for refusing to extend the Second Amendment to lawful permanent residents. They have necessarily "developed sufficient connection with this country to be considered part of [the] community." *Verdugo-Urquidez*, 494 U.S. at 265. Professor Rosberg has identified as "the traditional premise of the country's immigration policy—that resident aliens are virtually full-fledged members of the American community, sharing the burdens of membership as well as the benefits." Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the National Government*, 1977 Sup. Ct. Rev. 275, 337 (1978). And then-Professor Aleinikoff, a former General Counsel of the Immigration and Nationalization Service, observed a decade ago,
>
> "Permanently residing aliens live and function much like citizens. They hold jobs, attend churches, send their children to school, and pay taxes. Children they give birth to in the United States are American citizens. From this perspective, the fact that aliens are not required by law to apply for citizenship is not surprising; in day-to-day terms, permanently residing aliens and citizens are already largely indistinguishable."

*Fletcher*, 851 F. Supp. 2d at 301 (quoting T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State, and American Citizenship* 173 (2002)). Thus, the Court in *Fletcher* determined that the plaintiffs in that case, two lawful permanent resident aliens, were entitled to Second Amendment rights. *Fletcher*, 851 F. Supp. 2d at 301-02. *See also State of Washington v. Ibrahim*, 164 Wn. App. 503, 514 (Wash. App. Div. 3, 2011) (legal alien's conviction for unlawful possession of firearm reversed when statute barring lawful aliens from possessing

8

firearms found to unconstitutionally deny defendant 14th Amendment right to equal protection of law).

Additionally, on November 21, 2011, the District of Nebraska held that denying a lawful permanent resident the ability to possess a handgun in his home violated his fundamental Second Amendment rights. *See Pliego-Gonzalez v. City of Omaha,* 8:11-CV-335 (Order of Court attached hereto).

Last year, the Seventh Circuit compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional). According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny. *Id.* at 708. This means Missouri's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.* Though the Eighth Circuit has yet to consider the specific issue raised in this case, the *Ezell* decision is comprehensive, well-considered, and its holdings and reasoning should be followed by this Court. Doing so, it is evident Missouri cannot defend its arbitrary ban. Further, under any level of scrutiny (rational basis not even being up for consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), Missouri's statute fails.

II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

PLASTINO, and other members and supporters of SAF, enjoy a fundamental right to keep and bear arms. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010) (majority op.) (Alito, J.). "[T]he inherent right of self-defense has been central to the Second Amendment

9

right." *Heller*, 128 S. Ct. at 2817. The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Lowry v. Watson Chapel School District*, 540 F.3d 752, 762 (8th Cir. 2008) (First Amendment freedom of expression) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)); *See also Shrink Missouri Government PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998) (unconstitutional campaign contribution limits as violative of freedom of speech).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm. The *Ezell* Court held that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . . The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. (cite omitted). Infringements of this right cannot be compensated by damages." *See Ezell*, 651 F.3d at 699.

Put simply, if § 571.101.2(1) RSMo is not struck down, legal aliens including the plaintiffs will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for legal aliens to defend themselves against violence in a manner allowed not only by the vast majority of the United States, but also allowed to Missouri residents who are U.S. citizens, also causes a profound loss of a sense of one's security, to say nothing of the irreparable

10

harm resulting from a successful criminal attack.  Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

III.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN ON REGISTRATION BY LEGAL ALIENS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the concealed carry of a firearm such as a handgun for self-defense.  The infringement of constitutional rights is frequently considered to be beyond quantification with money damages.  This includes infringements of Second Amendment rights.  *See Ezell*, 651 F.3d at 699; *See also*, *e.g.*, *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (First Amendment free speech rights).

No legal remedies will be available to legal aliens whose concealed carry endorsement applications will be refused because non-citizens are denied equal protection of Missouri's firearms laws.  And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to Missouri's ban.

IV.     PLAINTIFFS WILL PREVAIL ON THE MERITS, AS MISSOURI'S BAN ON CONCEALED CARRY PERMITS VIOLATES THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS.

*Possession of Handguns for Lawful Purposes Including Self-Defense Lies at the Core of the Second Amendment.*

"In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win.  While 'an injunction cannot issue if there is no chance on the merits,' *Mid-America Real Estate Co. v. Iowa Realty Company*, 406 F.3d 969, 972 (8th Cir. 2005), the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary

11

relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" *PCTV Gold, Inc.*, 508 F.3d at 1143 (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).  In this case, Plaintiffs should certainly win on the merits, and the likelihood certainly rises above a "preponderance" standard.

"[T]he Court has acknowledged that certain unarticulated rights are implicit in enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980).  Unsurprisingly, the Supreme Court has noted that the enumerated, articulate right to possess a firearm for lawful purposes, most notably for self-defense, are fundamentally core to the Second Amendment.  *McDonald*, 130 S.Ct. at 3043.

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights.  *Heller*, 128 S. Ct. at 2818.  A complete ban on concealed possession of firearms for an entire class of legal Missouri residents, based on nothing more than citizenship status, will meet the same fate.

Therefore, Missouri's Ordinance strongly fails all four factors.  It is not within the State's constitutional power to ban otherwise qualified legal alien residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court (*See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would

12

fail constitutional muster.") - doing so violates the Second and Fourteenth Amendments. The State has no interest, let alone an extremely strong one, in denying all legal aliens the fundamental Second Amendment right of handgun possession in the same manner available to citizens. In light of the above, a preliminary injunction against the enforcement of § 571.101.2(1) RSMo should be immediately entered.

V.  THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, if not actual physical harm. The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified Missouri residents to defend themselves. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

*CONCLUSION*

Missouri cannot deny Second and Fourteenth Amendment rights to an entire class of its residents. Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: December 31, 2012                    Respectfully submitted,

David G. Sigale, Esq. (#6238103 (IL))       Matthew T. Singer, Esq. (MO ED Fed No.5262301)
LAW FIRM OF DAVID G. SIGALE, P.C.           THE LAW OFFICE OF MATTHEW T. SINGER
739 Roosevelt Road, Suite 304               6963 Waterman Avenue
Glen Ellyn, IL 60137                        St. Louis, MO 63130
630.452.4547                                (314) 272-3388
dsigale@sigalelaw.com                       MTSinger@MTSinger.com
Admitted *pro hac vice*

                                    By:  _____/s/ David G. Sigale_____
                                              David G. Sigale

                                    One of the Attorneys for Plaintiffs

13

## **CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

    1.    On December 31, 2012, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

    2.    Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                                                                          /s/ David G. Sigale
                                                                                  One of the Attorneys for Plaintiffs