UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD F. PLASTINO, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 4:12-CV-1316 CAS |
| CHRIS KOSTER, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiffs Edward F. Plastino and the Second Amendment Foundation, Inc.'s ("SAF") motion for preliminary injunction. Defendants Chris Koster, Attorney General of Missouri, and Tom Neer, Sheriff of St. Charles County, Missouri, oppose the motion. The motion is fully briefed, and on April 23, 2013, the Court heard oral argument on the issue. For the following reasons, the Court will deny plaintiffs' motion for a preliminary injunction.

*I. Background*

This case is a constitutional challenge to a Missouri state law that limits concealed firearm endorsements to citizens of the United States. Edward F. Plastino, a citizen of Canada who lawfully resides in St. Charles County and has lived in the United States since 1999, applied for a concealed carry endorsement with the St. Charles County Sheriff's Department. His application was denied on the specific basis that he is not a citizen of the United States, which is a requirement under Missouri law. In his complaint, Plastino challenges Mo. Rev. Stat. § 571.101 on its face[1] and as

---

[1]Generally speaking, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [statute] would be valid[.]' " See Washington State Grange v. Washington State Repub. Party, 552 U.S. 442, 449 (2008) (first alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). See also Wersal v. Sexton, 613 F.3d

applied under the Second Amendment and on Equal Protection grounds. The SAF, which maintains it has members in Missouri, also challenges the statute on these grounds. For relief plaintiffs ask that the Court declare the Missouri statute unconstitutional, and that it enter a preliminary and permanent injunction prohibiting the enforcement of the statute against non-citizens.

Plaintiffs filed their complaint on July 23, 2012. Defendants filed a Rule 12(b)(6) motion to dismiss, arguing among other things that neither plaintiff could assert an injury-in-fact sufficient to confer standing. Shortly thereafter, plaintiffs filed an amended complaint, which defendants answered. It was not until December 31, 2012, that plaintiffs filed their motion for preliminary injunction, which is presently before the Court.[2] Defendants oppose the motion on the bases that the SAF does not have standing to sue,[3] there is no Second Amendment right to carry a concealed firearm, and the statute passes scrutiny under Equal Protection analysis. Defendants also argue that plaintiffs would not incur irreparable harm, and that the public interest outweighs granting the preliminary injunction.

The Court held a preliminary injunction hearing on April 23, 2013, at which all the parties presented oral argument. The parties declined to submit testimony or other evidence at the hearing. Plaintiffs did submit the written declarations of Mr. Plastino and Julianne Versnel, the Director of Operation for SAF, in support of their motion.

---

821, 831 (8th Cir. 2010) ("Indeed, a plaintiff can [generally] only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the [law] would be valid." (alterations in original) (internal quotations and citations omitted)).

[2]The motion was not fully briefed until February 26, 2013, after the Court granted both sides extensions of time.

[3]For purposes of deciding plaintiffs' motion for a preliminary injunction, the Court need not address whether the Second Amendment Foundation has standing in this case. No one disputes that plaintiff Plastino has standing to challenge the statute at issue, as it was applied against him.

## *II.  Standard*

In determining whether to issue a preliminary injunction against a duly enacted statute, courts must consider these factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and  (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc).  See also TCF Nat'l Bank v. Bernanke, 643 F.3d 1158, 1162 (8th Cir. 2011); PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir. 2007). A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. See Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The primary purpose of an injunction is to maintain the status quo until a court may grant full effective relief on a final hearing.  Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 490 (8th Cir. 1993).

## *III.  Discussion*

Under Missouri law, with limited exceptions, gun owners must obtain a concealed carry endorsement in order to lawfully carry a concealed firearm. Section 571.101 outlines the requirements and procedures for obtaining a concealed carry endorsement in Missouri.  See Mo. Rev. Stat. § 571.101.  Among the numerous requirements and qualifications, the State of Missouri requires that an applicant must be a United States citizen in order to obtain a concealed carry endorsement.[4]  Mo. Rev. Stat. § 571.101.2(1)   Plaintiffs challenge only this aspect of the statute.

---

[4]As it relates to this suit, Mo. Rev. Stat. § 571.101.2(1) provides in pertinent part:

> 2.  A certificate of qualification for a concealed carry endorsement issued pursuant to subsection 7 of this section shall be issued by the sheriff or his or her designee of the county or city in which the applicant resides, if the applicant:
>
> (1)     Is at least twenty-one years of age, is a citizen of the United States . . .

3

In their complaint, plaintiffs allege that the citizenship requirement contained in § 571.101.2(1), which restricts lawfully admitted aliens from carrying concealed firearms based on citizenship, violates their individual right to keep and bear arms as secured by the Second Amendment. They also allege the citizenship requirement of § 571.101.2(1) is a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

In the motion presently before the Court, plaintiffs argue that they meet all the requirements for the entry of a preliminary injunction, and move that the Court enjoin defendants from enforcing § 571.101.2(1) as to non-citizens, provided that non-citizen applicants are otherwise qualified to obtain a concealed carry endorsement.

The Court will first address whether there is a threat of irreparable harm to plaintiffs in the absence of a preliminary injunction. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–07 (1959). The party seeking preliminary injunctive relief bears the burden to show a threat of irreparable harm. Roudachevski v. All–Am. Care Ctrs., Inc., 648 F.3d 701, 706 (8th Cir. 2011). "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" Roudachevski, 648 F.3d at 706 (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)). As the Eighth Circuit has noted, "a failure to demonstrate irreparable harm, standing alone, may be a sufficient basis to deny preliminary injunctive relief." Caballo Coal Co. v. Indiana Mich. Power Co., 305 F.3d 796, 800 (8th Cir. 2002) (citing Dataphase, 640 F.2d at 114 n.9). Where irreparable harm is not shown, injunctive relief is properly denied. Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1984). See

also Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 n.5 (8th Cir. 2008) ("Indeed, in some cases, lack of irreparable injury is the factor that should begin and end the Dataphase analysis) (citing Adam–Mellang v. Apartment Search, Inc., 96 F.3d 297 (8th Cir. 1996)).

Plaintiffs argue that they will suffer irreparable harm in the absence of preliminary injunctive relief because the statute deprives them of their Second Amendment constitutional right to keep and bear arms. Citing to First Amendment cases, plaintiffs assert that the denial of a constitutional right, even temporary, constitutes irreparable harm. See, e.g., Lowry v. Watson Chapel Sch. Dist., 540 F.3d 752, 762 (8th Cir. 2008) (challenging restriction on freedom of expression); Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008) (challenging restriction on right to assemble and picket). Plaintiffs write, "Put simply, if § 571.101.2(1) [Mo. Rev. Stat.] is not struck down, legal aliens including the plaintiff will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights." See Doc. 27 at 10.

First and foremost, this case does not implicate a First Amendment right, the loss of which the Eighth Circuit has held constitutes irreparable injury in of itself. See, e.g., Lowry, 540 F.3d at 762. The Court declines to extend First Amendment law to the context of the Second Amendment. Cf. Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. 2012) ("it would be . . . imprudent to assume that the principles and doctrines developed in connection with the First Amendment apply equally to the Second [Amendment]"). Therefore, cases holding that even temporary denial of First Amendment rights constitutes irreparable harm are not persuasive that irreparable has been shown here.[5]

---

[5] In their complaint plaintiffs also allege an Equal Protection violation under the Fourteenth Amendment. Plaintiffs did not cite to controlling legal authority that a temporary Equal Protection violation amounts to irreparable harm under the Dataphase analysis.

Second, the Court finds that this case does not involve a limitation on a Second Amendment right. The Supreme Court has stated that "the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." District of Columbia v. Heller, 554 U.S. 570, 626 (2008). The Supreme Court noted that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." Id. Indeed, the nineteenth century Supreme Court agreed, noting in dicta that "the right of the people to keep and bear arms . . . is not infringed by laws prohibiting the carrying of concealed weapons." Robertson v. Baldwin, 165 U.S. 275, 281–82 (1897).

Modern federal courts that have been specifically called upon to address the constitutionality of concealed carry restrictions have found the restrictions did not violate the Second Amendment. See Peterson v. Martinez, 707 F.3d 1197 (10th Cir. 2013) (holding Second Amendment does not provide the right to carry a concealed firearm); Kachalsky, 701 F.3d 81 (holding New York legislation limiting concealed firearms in public does not violate the Second Amendment); Hightower v. City of Boston, 693 F.3d 61, 73 (1st Cir. 2012) (holding revocation of license to carry concealed firearm did not violate Second Amendment); United States v. Rene E., 583 F.3d 8, 12 (1st Cir. 2009) ("laws prohibiting the carrying of concealed weapons" are an "example[ ] of 'longstanding' restrictions that [are] 'presumptively lawful' under the Second Amendment") (quoting Heller, 554 U.S. at 626); Richards v. County of Yolo, 821 F.Supp. 2d 1169, 1174 (E.D. Cal. 2011) ("[T]he Second Amendment does not create a fundamental right to carry a concealed weapon in public"); Martinkovich v. Oregon Legislative Body, 2011 WL 7693036, at *2 (D. Or.

Aug. 24, 2011) ("The Second Amendment does not prohibit regulations on carrying a concealed weapon."); Dorr v. Weber, 741 F.Supp.2d 993, 1005 (N.D. Ia. 2010) ("a right to carry a concealed weapon under the Second Amendment has not been recognized to date").  In sum, plaintiffs have not met the irreparable harm requirement merely because they have alleged a constitutional violation under the Second Amendment.

Plaintiffs also argue that they will suffer irreparable harm absent an injunction, because not being allowed to carry a concealed firearm "causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack."  See Doc. 27 at 10-11.  The Court also finds this argument unavailing.  First, Mr. Plastino admits that he and other non-citizens in Missouri are allowed to openly carry guns and have guns in their homes. Non-citizens are not prohibited from owning and carrying guns; they are prohibited only from carrying concealed guns. The Court fails to see the logic as to why Mr. Plastino, or any non-citizen, would feel more secure carrying his gun concealed, as opposed to carrying his gun in the open.  In their reply memorandum, plaintiffs list a number of municipalities where open carry is not allowed and, therefore, plaintiffs' attorney argued at the hearing, there are areas in the state of Missouri where non-citizens would not be allowed to carry a gun at all.  Mr. Plastino, however, did not state in his declaration that he frequents or even intends to visit these specific municipalities.  There is no evidence in the record that members of the SAF are located in these municipalities, either.

Plaintiffs also presented no evidence, as opposed to mere argument, that carrying a concealed firearm prevents "criminal attacks," as they suggest.  What is more, the argument that Mr. Plastino might be the victim of a criminal attack, and that he could thwart that criminal attack if only he could carry a concealed gun, as opposed to openly carrying a gun, is nothing short of pure speculation. Speculative harm does not support a preliminary injunction. See, e.g., Minnesota Ass'n

7

of Health Care Facilities, Inc. v. Minnesota Dep't of Pub. Welfare, 602 F.2d 150, 154 (8th Cir.1979) ("the speculative nature of the threatened harm support[s] the denial of injunctive relief"). Because non-citizens are allowed to open carry in Missouri, the Court sees no irreparable harm in continuing Missouri's citizenship restriction on concealed carry until such time as this case can be decided on the merits.

### V. Conclusion

Under the facts of this case and based on the record before it, the Court does not find that plaintiffs are at risk of "certain and great" harm that can be prevented by an injunction. Iowa Utils. Bd., 109 F.3d at 425. The Court sees no harm in maintaining the status quo until the case can be decided on the merits. Finding plaintiffs have not established that they will suffer any irreparable harm, the Court declines to enter a preliminary injunction.

Accordingly,

**IT IS HEREBY ORDERED** that Edward F. Plastino and the Second Amendment Foundation, Inc.'s motion for preliminary injunction is **DENIED.** [Doc. 26]

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   24th   day of April, 2013.