```
 1                   STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, ST. LOUIS
 2

 3    EDWARD F. PLASTINO, et al,        )
                                        )
 4                     Plaintiff,       )
                                        )
 5    v.                                )    No. 4:12CV1316-CAS
                                        )
 6    CHRIS KOSTER, et al,              )
                                        )
 7                     Defendant.       )

 8

 9                 PRELIMINARY INJUNCTION HEARING

10

11              BEFORE THE HONORABLE CHARLES A. SHAW
                   UNITED STATES DISTRICT JUDGE

12                        APRIL 23, 2013

13    APPEARANCES:

14    For Plaintiff:      David G. Sigale
                          LAW FIRM OF DAVID G. SIGALE, P.C.
15                        739 Roosevelt Rd., Ste. 304
                          Glen Ellyn, IL 60137
16
                          Matthew T. Singer
17                        LAW OFFICE OF MATTHEW T. SINGER
                          6963 Waterman
18                        St. Louis, MO 63130

19    For Defendant:      Joanna L. Trachtenberg
                          ATTORNEY GENERAL OF MISSOURI OFFICE
20                        P.O. Box 899
                          Jefferson City, MO 65102
21
                          Robert E. Hoeynck, Jr.
22                        Toby J. Dible
                          ST. CHARLES COUNTY COUNSELOR'S OFFICE
23                        100 N. Third Street, Ste. 216
                          St. Charles, MO 63301

24

25
```

```
1    REPORTED BY:              PATTI DUNN WECKE, RMR, CRR, CMRS
                               Official Court Reporter
2                              United States District Court
                               111 S. Tenth Street
3                              St. Louis, MO 63102
                               314-244-7984
4

5        PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    (THE FOLLOWING PROCEEDINGS WERE HAD ON APRIL 23,

2      2013, IN OPEN COURT:)

3                    THE COURT:  This is Edward Plastino versus Chris

4      Koster and Tom Neer and we're here on preliminary

5      injunction.  Who do we have representing Mr. Plastino?

6                    MR. SIGALE:  Good afternoon, Your Honor.  David

7      Sigale, S-I-G-A-L-E, on behalf of Mr. Plastino.

8                    MR. SINGER:  Your Honor, Matthew Singer, local

9      counsel.

10                   THE COURT:  Okay.

11                   MR. SIGALE:  And, Your Honor, Mr. Plastino is

12     actually present today as well.

13                   THE COURT:  Hello, Mr. Plastino, how are you

14     doing?  Very well.  And who do we have representing the

15     Attorney General?

16                   MS. TRACHTENBERG:  Joann Trachtenberg, Your

17     Honor.

18                   THE COURT:  And representing Mr. Neer?

19                   MR. HOEYNCK:  Robert Hoeynck of St. Charles

20     County Counselor's Office.

21                   MS. DIBLE:  And Toby Dible, also of St. Charles

22     County Counselor's Office.

23                   THE COURT:  Okay.  First of all, I'm just

24     wondering why there was this belated filing of this

25     preliminary injunction in this case.  I was inclined to

1    take this with the case.  Any answer to that?

2          MR. SIGALE:  I'm sorry, Your Honor?

3          THE COURT:  Mr. Sigale, I'm saying you kind of

4    delayed on this.  You didn't file this case asking for a

5    TRO, so now you're filing for a preliminary injunction.

6    What's the deal?  What was the delay?  Oh, yeah, I need

7    this right away.

8          MR. SIGALE:  Your Honor, I apologize, I didn't

9    realize there was a delay.  I filed for -- I mean, I

10   started writing the preliminary injunction motion and

11   memorandum pretty much right after I received --

12         THE COURT:  No, no, I'm saying when you filed the

13   case, generally if you are in a hurry, you ask for a TRO as

14   soon as you file it.

15         MR. SIGALE:  Your Honor, in discussions with my

16   clients, we just felt that right now laying out the facts

17   in a preliminary injunction motion was the better choice,

18   Your Honor.

19         THE COURT:  Well, is there any reason why they

20   shouldn't be taken with the case as a whole?

21         MR. SIGALE:  Yes, Your Honor.  I mean, for the

22   reasons that we are arguing for a preliminary injunction,

23   and mostly --

24         THE COURT:  Okay, well tell me -- give me your

25   strongest reason for not delaying this.  Why you need this

1   right away?

2            MR. SIGALE:  The irreparable harm to Mr. --

3            THE COURT:  What's the irreparable harm?

4            MR. SIGALE:  The irreparable harm is twofold,

5   Your Honor.  The irreparable harm is, one, the deprivation

6   of constitutional rights involved which --

7            THE COURT:  Constitutional rights?  He's not

8   denied the right to own or carry a weapon displayed.  The

9   state statute just talks about conceal, so I don't know

10  about any second amendment.  There are some limitations on

11  that.

12           MR. SIGALE:  Well, Your Honor, and if I may, I

13  was going to ask to submit this to the Court.

14           THE COURT:  Well, it's kind of late.  You can

15  give it to us when it's over.  I can't read it now.

16           MR. SIGALE:  I'm not asking the Court to read it

17  now.  I'll just proffer to the Court that it is an entry of

18  a preliminary injunction from March 30th by the district

19  court in New Mexico on this exact same issue.  Your Honor,

20  the Court found that the violation of equal protection

21  rights is in and of itself a fundamental right, and

22  therefore there is a constitutional right even if the Court

23  --

24           THE COURT:  Well, I'll take a look at that.  You

25  know, you say it stands for one thing, and I haven't looked

1   at it, so fine and well, but they may have issued a TRO,

2   but I really don't see -- I have difficulty seeing this

3   irreparable harm, you know, at this point in terms of

4   granting a TRO.  On the other hand, this security

5   interests, I mean, maybe the State can tell us something

6   about the security interests they are talking about, maybe

7   Mr. Hoeynck can tell us about it.  I mean, if somebody can

8   carry a gun that's open and so forth, what's the

9   difference, you know, in terms of being a citizen and legal

10  resident?  I don't see all this security there.  Tell me

11  about that.  Here you've got these cases where, okay, you

12  know, it's all right to take the bar, can't discriminate on

13  that basis, fishing license, or I guess a hunting license

14  or whatever.  Talk to me.

15         MS. TRACHTENBERG:  Ms. Trachtenberg, Your Honor.

16  I've replaced Andrew Hartnett on this case.  Your Honor,

17  the State has made a decision to regulate concealed carry

18  with a permit.  And to obtain a concealed carry permit, you

19  have to pass certain requirements, one of which is a

20  background check.  And the background check examines

21  whether somebody has a felony background, whether they

22  have --

23         THE COURT:  How is it more difficult to do a

24  background check on a citizen as compared to a legal

25  resident?

1          MS. TRACHTENBERG:  Well, the difference is that

2    the background check database that we have access to only

3    really has domestic felony records in it.  It has

4    international warrants but it doesn't have international

5    felony records.

6          THE COURT:  Well, what about a citizen traveling

7    overseas and committing a felony?

8          MS. TRACHTENBERG:  Your Honor, it's true that

9    it's possible that a citizen could travel overseas and

10   commit a felony, but the ties to another country when

11   somebody is a citizen of another country are certainly

12   stronger than the ties that you would expect from a citizen

13   of the United States to another country.  And so the State

14   has made a decision that it's much more difficult to track

15   down criminal backgrounds from other countries, and so they

16   limit this license, which is not a Second Amendment right,

17   it's a concealed-carry permit, which many courts have found

18   is not a Second Amendment right, and they limit this

19   license to U.S. citizens in part because the background

20   checks are substantially easier for domestic crimes than

21   for international crimes.

22         THE COURT:  Well.  Any response to that, Mr.

23   Sigale?

24         MR. SIGALE:  Twofold, Your Honor.  The first is

25   that any speculative, A, acts that a legal resident alien

1  like Mr. Plastino who there is nothing offered by the State

2  and certainly nothing that they would find regardless, that

3  Mr. Plastino or any legal resident alien is somehow more

4  untrustworthy or more likely to commit any bad act --

5  THE COURT:  Is there any time requirement

6  relative in terms of a legal resident as compared to a

7  citizen, for instance, if a legal resident -- is there a

8  length of time?  There is no length of time in the State

9  statute, is there?

10  MS. TRACHTENBERG:  No, Your Honor, there's not.

11  MR. SIGALE:  You are either a citizen or you're

12  not.  So, number one, the act, the speculative argument

13  that maybe a lawful resident alien has a felony record

14  somewhere else, and a citizen has a felony crime somewhere

15  else, I mean, it's all speculative.  It basically is

16  another way of making the argument that lawful resident

17  aliens are somehow more untrustworthy because they are

18  lawful resident aliens, which the Supreme Court has

19  specifically disallowed.

20  THE COURT:  Well, I mean, there are limitations

21  like on jury service, voting, holding political office,

22  that kind of thing.  There are some limitations.  Now, I

23  mean, maybe the State is saying there ought to be an

24  exception relative to public safety for the protection of

25  the citizens, or whatever, you know, the public -- not

1    citizens, the public.

2            MR. SIGALE:  Well, Your Honor, I will say to

3    that, number one, of course, public safety is a public

4    interest.  Having said that, number two, under the case

5    law, the Second Amendment or the regulating manner of

6    carrying a firearm is not a political function such that

7    the State is allowed to discriminate, such as in perhaps

8    the Sugarmann v. Dougall case, which they weren't even

9    allowed to do that in that case.  And that argument didn't

10   hold water when it came to certain types of employment, and

11   that exception to the extent that the State is allowed to

12   rely on it, it has no applicability to this case we would

13   argue, Your Honor.

14           Basically the State is arguing, A, that somehow

15   legal residents are more untrustworthy, when as the Court

16   noted, he's allowed, Mr. Plastino and others like him, they

17   are allowed to carry openly, they are allowed to carry in

18   their car, they're allowed to carry on their land, just

19   somehow for this they are not trustworthy.  Well, the

20   Supreme Court has said that discrimination like that for no

21   real basis other than the basis of their class, is

22   disallowed.

23           THE COURT:  Well, in a lot of instances, I mean,

24   here we got a public safety issue.  You're talking about

25   this case in New Mexico, which I have not seen, and I'll

1  take a look at it, but, you know, we're moving into a

2  different area.  And they are not saying that they are more

3  or less trustworthy.  They are saying that they have the

4  difficulty in doing this investigation as to their

5  background.  But I am bothered in terms of this preliminary

6  injunction in terms of this irreparable harm in terms of

7  obtaining a preliminary injunction, so that he can, you

8  know, so that Mr. Plastino can walk out of here and carry a

9  concealed weapon.  I mean, I don't see -- what's the rush

10 on this?  Where is he -- I mean, I understand, you know,

11 it's not a question as far as citizens are concerned, but,

12 I mean, what's the rush?  Why does he immediately need to

13 carry a concealed weapon?

14         MR. SIGALE:  Twofold, Your Honor.  First, again,

15 he's being denied his constitutional rights; that in and of

16 itself is irreparable harm.

17         THE COURT:  I understand that, and that's

18 something I was talking about we can deal with in terms of

19 the whole case.  But you said he needs to carry a concealed

20 weapon right now.

21         MR. SIGALE:  What we're saying, Your Honor, is

22 that he should be allowed to obtain a permit right now.

23 And the fact is is that he has a public safety concern as

24 well.  That there are places --

25         THE COURT:  Is he a law enforcement officer?

1      MR. SIGALE:  No, he's a lawful resident of the

2  state.

3      THE COURT:  I understand that, but you said he

4  has a public safety concern.  I mean, does he have some

5  special duty to protect the public?

6      MR. SIGALE:  No, he's just a member of the

7  public, Your Honor.

8      THE COURT:  That's what I'm talking about.  So,

9  why does he need a gun right now?

10      MR. SIGALE:  He desires the permit now, Your

11  Honor.

12      THE COURT:  Well, you know, I mean, the permit is

13  the gun.

14      MR. SIGALE:  Well, The permit gives him the right

15  to obtain one, and certainly Mr. Plastino would desire one

16  in areas where he travels.

17      THE COURT:  Well, maybe he needs to check out

18  where he's going, if he's in an area where he's -- where is

19  he traveling?

20      MR. SIGALE:  Well, Your Honor --

21      THE COURT:  You know, they say he's hanging out

22  in the wrong places and with the wrong people.

23      MR. SIGALE:  Well, Your Honor, my office is near

24  Chicago, and certainly that argument -- that's certainly

25  true.

1          THE COURT:  Do you have your permit?

2          MR. SIGALE:  Your Honor, that's a separate case.

3    That's the Moore versus Madigan case.

4          THE COURT:  Oh, right, okay.  No, I'm talking

5    about your case.  You want to bring up Chicago as an

6    example of being dangerous.  I say, you got your permit?

7          MR. SIGALE:  You are not allowed to get a permit

8    in Chicago.

9          THE COURT:  Okay.  I'm just checking.

10         MR. SIGALE:  We're fighting that case right now

11   actually.  But, Your Honor, basically the State has no --

12   the State has no constitutional basis for discriminating.

13         THE COURT:  Well, you know, I can somewhat see

14   this equal protection argument, but I do not see the Second

15   Amendment argument because I see that there could be some

16   restrictions relative to -- I mean, there always have been,

17   whether you got a state law, that's what you're arguing

18   about in terms of equal protection -- but a Second

19   Amendment argument, I just don't see that at all, I just

20   don't see that.

21         MR. SIGALE:  Yeah, Your Honor, and obviously the

22   plaintiffs will concede that the Supreme Court has not yet

23   ruled that a concealed carry is a fundamental right, but

24   what is a fundamental right as implied if not stated by the

25   Court in District of Columbia versus Heller, and in

1    McDonald versus City of Chicago, and --

2             THE COURT:  Well, those was guns in the homes,

3    weren't they?

4             MR. SIGALE:  Well, that was the fact pattern, but

5    that wasn't what the Court was -- the Court wasn't limiting

6    its ruling to the home.  What the Court said in those cases

7    is that the people have the fundamental right to keep and

8    bear arms for confrontation, which is not limited to the

9    home.

10            At any rate, Your Honor, the plaintiffs will

11   concede that doesn't specifically say concealed carry, but

12   what it does say is public carrying.  Now, the State, of

13   course, has the right to regulate public carrying.  One of

14   the ways the State has the right to regulate public carry

15   is to choose the manner of public carry.  They can choose

16   open carry.  They can choose concealed carry.  State of

17   Missouri allows both.  That's the manner in which they've

18   chosen to regulate the public carrying of firearms, which

19   is a fundamental Second Amendment right.  The only

20   difference is, is that they are discriminating against

21   Mr. Plastino and others like him for no other reason than

22   their class.  And to the extent that the Court feels that

23   that's kind of a hybrid Second Amendment and Fourteenth

24   Amendment argument, then, you know, the Court could look at

25   it that way.  But that argument, that reality does exist,

1    and that's even aside from the argument of, that any

2    discrimination by those as a class, even if it's not about

3    a fundamental right, whether the Court is talking about

4    social rights and economic rights, that is a violation of

5    Fourteenth Amendment, equal protection, and is subject to

6    strict scrutiny as well.

7            So, that the Second Amendment argument, yeah,

8    it's kind of intertwined with the Fourteenth Amendment.

9    The State doesn't get to choose the manner of concealed --

10   of public carrying and then deny it to an entire class just

11   because they are a class.

12           So, if the Court sees the Second Amendment right

13   that I'm discussing is fundamental, then that's one avenue.

14   But equally valid is the other avenue, which is here is a

15   law that lawful aliens are being discriminated against on

16   the basis of class.  And even if the Court -- and again the

17   New Mexico case I submitted to the Court, and I would ask

18   you to please take a look at it.

19           THE COURT:  I'll take a look at it.

20           MR. SIGALE:  But that Court, just for disclosure,

21   said that it does not find a Second Amendment right to

22   concealed carry, but nevertheless equal protection applies,

23   and entered the preliminary injunction.

24           THE COURT:  Is it the same fact, is it the same

25   situation here, same state laws, both the concealed carry

1    open carry, but only the concealed carry, it disallows

2    anyone but citizens to get a concealed-carry permit?  Is it

3    the same factfinder?

4              MR. SIGALE:  It is.

5              THE COURT:  Well, I'll take a look.

6              MR. SIGALE:  And Tenth Circuit law is a little

7    bit different with regard to the Second Amendment.

8              THE COURT:  Well, Arizona, they used to call it

9    the wild, wild west, you know, so.

10             MR. SIGALE:  But if the Court chooses to rule the

11   same way as Judge Armijo in the District of New Mexico,

12   plaintiffs will be perfectly satisfied.

13             THE COURT:  I guess so.  Anything else you want

14   to tell me?

15             MR. SIGALE:  Other than --

16             THE COURT:  Mr. Singer seems to be chomping at

17   the bit.  You got anything?  You want a quick hit here?

18             MR. SINGER:  Your Honor, you asked a number of

19   pertinent questions as a practical matter --

20             THE COURT:  I always ask perfect questions.

21             MR. SINGER:  Absolutely.

22             THE COURT:  I am looking for perfect answers,

23   that's my problem.

24             MR. SINGER:  And I hope to give you a couple of

25   those.

1           THE COURT:  Go for it.

2           MR. SINGER:  I'm local counsel.  I do have my

3    CCW.  When I got my CCW it was at the suggestion of the

4    St. Louis Police Department after I called them.  They said

5    they were not able to respond to all calls, I should learn

6    to secure myself.  So, what does that mean?  They said get

7    a gun, learn how to use it.  I said I don't feel

8    comfortable taking my five-year-old daughter out to this

9    car that just got broken into under an overpass, and they

10   said that's a dangerous area, just like you said.  I said,

11   I'm less than two blocks from FBI headquarters, I'm right

12   at Union Station.  And they said, look we can't be

13   everywhere.  You need to protect yourself.  We'd love to

14   protect you if we could, but we can't protect everybody.

15           THE COURT:  You got the concealed carry but we're

16   talking about Mr. Plastino.  You are going too far on your

17   case.

18           MR. SINGER:  How are he and I different?  Has he

19   committed a crime to prevent him from doing that or is he

20   merely being not a legal citizen --

21           THE COURT:  You hear what the State is saying?

22   The State is saying, you know, that it's hard -- it's a

23   public safety issue.  It's harder for them to do these

24   background checks, that's what they say.

25           MR. SINGER:  And if Mr. Plastino had lived in the

1    state of Missouri his entire life and still had the same

2    background --

3          THE COURT:  Well, I think that that's perhaps a

4    flaw in the law.  Perhaps the law should have a number of

5    years with it in terms of a legal resident or something.

6    It's hard to do the background check, but maybe if somebody

7    has been here a number of years, it's a whole different

8    story.  So, I think that cuts in your favor in the sense

9    that there's no time limit on this thing.  It's hard to

10   check the background -- well, I understand if somebody just

11   got here recently.

12         MR. SINGER:  Your Honor, if their interest was

13   only public safety it would be in preventing my client from

14   having a firearm, not from concealing and carrying one,

15   when he can openly carry one.  If they want to do that,

16   then they can do that.  That would be part of the 44473

17   when he goes and buys a gun, says you don't meet this

18   criteria, you're not legally allowed to own a gun.  He is

19   legally allowed to own a gun in this country.  He can own a

20   gun shop in this country.  He can sell Class III firearms,

21   which need to be registered with the Federal Government,

22   law enforcement officers, but he can't carry a concealed

23   weapon on him?

24         MR. SIGALE:  Your Honor, I do want to point out

25   something in response to what the Court just said.  I just

1   want to make it perfectly clear, Your Honor, that this case

2   is limited to lawful resident aliens like Mr. Plastino and

3   others like him.  This is not an illegal alien case.  This

4   is not a student visa case.

5             THE COURT:  I understand that.

6             MR. SIGALE:  So this isn't about showing up, you

7   know, coming off at Ellis Island, you know, driving to

8   Missouri and getting a concealed carry permit.  This is

9   about those people who in the words of the Supreme Court

10  have established significant connections with this country

11  such that they have earned the trust.  So, this case, what

12  the Court is saying about, you know, a certain amount of

13  time to obtain a lawful resident alien card, green card,

14  you do have to reach certain criteria --

15            THE COURT:  I understand.  What kind of oath is

16  taken to the country as compared to a citizen?

17            MR. SIGALE:  I'm sorry, Your Honor?

18            THE COURT:  What kind of oath is taken as

19  compared to a citizen to the security of this country?

20            MR. SIGALE:  Well, Your Honor, you do have to

21  apply for a green card.  There's numerous procedural steps

22  to be taken.  I'm not aware of per se an oath to be taken

23  to get a green card, but you do have to pass certain

24  procedural steps.  And the Supreme Court has said that when

25  you obtain that status, you have constitutional rights, you

1    have fundamental constitutional rights, United States

2    versus Verdugo-Urquidez is the case, I believe, that you

3    have established those significant connections to this

4    country.  So, again, this is not about illegal aliens or

5    student visas, but this about a specific class of persons

6    who the Supreme Court has held have those constitutional

7    rights.

8          THE COURT:  I understand.  Ms. Trachtenberg, you

9    going to do all the speaking?

10         MS. TRACHTENBERG:  Your Honor, I think maybe

11   Mr. Hoeynck has something --

12         THE COURT:  Well, plaintiffs have spoken.  Mr.

13   Sigale has spoken.  So do you all have anything further

14   that you all wish to say, because I'm looking at this

15   security issue and I just raised this issue about an oath,

16   and those kinds of things, and this whole thing about, you

17   know, maybe the statute would be a better statute if had

18   some time that a legal resident were a legal resident, you

19   know, of the country or something.

20         MR. HOEYNCK:  Just briefly, Your Honor.  We have

21   the ability to check immigration status.  And conferring

22   with the records division which issues the certificates,

23   this is not a situation that comes up much.  Last year --

24   we're the third largest county by population in the

25   state -- we only denied two concealed carry certificates to

1    legal resident aliens, one of which was Mr. Plastino.

2            Also, the standing issue here, we are contending

3    Second Amendment foundation itself has no standing because

4    they are not an applicant for concealed-carry permit.

5            THE COURT:  I agree you may be on the money

6    there, but, you know, this whole thing of equal protection

7    seems to be a significant issue there.  Ms. Trachtenberg,

8    go ahead.

9            MS. TRACHTENBERG:  Just going to the issue of

10   irreparable harm --

11           THE COURT:  That is where I am most concerned in

12   terms of why did Mr. Plastino need a gun right now.

13           MS. TRACHTENBERG:  And I agree with you, Your

14   Honor, in fact what they've just said --

15           THE COURT:  A concealed carry.

16           MS. TRACHTENBERG:  -- why it's not necessary that

17   he have a preliminary injunction in this case, because he

18   has the right to open carry, he has the right to possess

19   firearms in his home.  Those are the Second Amendment

20   rights here.  So taking this with the case makes perfect

21   sense to me.  I don't see that it needs to be done in a

22   preliminary injunction context.  And taking it with the

23   case allows us to more efficiently change our practices if

24   the law is going to be changed, rather than changing and

25   then changing it back makes more sense --

1          THE COURT:  And maybe too it may allow you to

2    file some more briefs and argument that is a little bit

3    more comprehensive here.

4          Well, let me tell you what.  I'm going to deal

5    with this preliminary injunction, but I am not inclined to

6    grant it because I don't see the irreparable harm of

7    Mr. Plastino needs to carry a gun right now -- I mean a

8    concealed carry, because he has the other rights that

9    Ms. Trachtenberg said, he can have a gun in his house, the

10   open carry is available, but the ability to carry a

11   concealed carry, I think I'm likely to take this with the

12   whole case.

13         So, thank you gentleman.  Thank you

14   Ms. Trachtenberg.  You all have a pleasant day.  You will

15   hear from me soon.

16         MR. SIGALE:  Your Honor, I do apologize, I was

17   hoping that I might be able to briefly respond to what

18   counsel said.

19         THE COURT:  I don't know that that's going to be

20   necessary.  You've both had your opportunity.  You file

21   your briefs in this manner.  I think I've heard enough.

22         MR. SIGALE:  May I approach and submit the New

23   Mexico opinion I was referring to.

24         THE COURT:  Does the State have a copy of it?

25         MR. SIGALE:  I submitted copies to both of

```
 1   them.

 2             THE COURT:  Very well, give it to my law clerk

 3   here.  Thank you all.

 4             (ADJOURNED)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        REPORTER'S CERTIFICATE

2

3           I, Patti Dunn Wecke, Registered Merit Reporter,

4    hereby certify that I am a duly appointed official court

5    reporter of the United States District Court for the

6    Eastern District of Missouri.

7           I further certify that the foregoing is a true

8    and accurate transcript of the proceedings held in the

9    above-entitled cause, and a true and correct transcription

10   of my stenographic notes.

11          I further certify that this transcript,

12   containing pages 1 – 22 inclusive, was delivered

13   electronically and that this reporter takes no

14   responsibility for missing or altered pages of this

15   transcript when same transcript is copied by any party

16   other than this reporter.

17          Dated at St. Louis, Missouri, this 4th day of

18   4th, 2013.

19                        /s/Patti Dunn Wecke, RMR, CRR, CMRS
                                Official Reporter
20

21

22

23

24

25